CCC: MEM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION FOR SEARCH WARRANTS FOR THE PREMISE KNOWN AND DESCRIBED AS: | AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT |
| THE RESIDENCE LOCATED AT 127 DAYTON AVENUE, MANORVILLE, NEW YORK 11949, INCLUDING ANY LOCKED OR CLOSED CONTAINERS THEREIN (THE "SUBJECT PREMISE") | (Fed. R. Crim. P. 41) |

– – – – – – – – – – – – – – – – – – – – X      **17  969M**

EASTERN DISTRICT OF NEW YORK:

     SEAN GABAY, being duly sworn, deposes and states that he is a Special

Agent with the United States Department of Homeland Security, Homeland Security

Investigations ("HSI"), duly appointed according to law and acting as such.

     Upon information and belief, there is probable cause to believe that there is

kept and concealed within THE RESIDENCE LOCATED AT 127 DAYTON AVENUE,

MANORVILLE, NEW YORK 11949, INCLUDING ANY LOCKED OR CLOSED

CONTAINERS THEREIN (the "SUBJECT PREMISE"), further described in Attachment A,

within the Eastern District of New York, certain property, namely:

1.   drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;

2.   books and records, showing cash transactions, prices and quantities of drugs bought and sold;

3.   books and records showing the names, addresses and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking;

4.      pagers, electronic organizers, cellular telephones and related bills and receipts;

5.      firearms, including firearm ammunition, shell casings, discharged rounds and holsters;

6.      motor vehicle records, telephone bills, property records showing ownership of assets purchased with drug proceeds;

7.      banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips and any other documents evidencing financial transactions conducted with proceeds;

8.      currency used to purchase drugs, or reflecting proceeds of sales of drugs; and

9.      photographs, photographic negatives (developed and undeveloped) and video tapes or disks, which show the identities of conspirators, contraband, and evidence of drug trafficking;

all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 924(c).

I.      INTRODUCTION

1.      I have been a Special Agent assigned with HSI for over 11 years and I am currently assigned to the HSI Violent Gang and Narcotics Unit ("VGNU"). During this time, participated in numerous investigations into allegations of unlawful possession, distribution and manufacture of controlled substances, including but not limited to cocaine, cocaine base, heroin and marijuana. Further, on many occasions, I have participated in investigations involving firearms, including the discharge of firearms.[1] These investigations

---

[1]      Based on my training and experience, firearms are a "tool of the trade" in relation to possession and distribution of narcotics. Firearms are often times used by

involved working with undercover officers, confidential informants, as well as conducting surveillance and controlled purchases of narcotics. The information contained in this affidavit comes from my discussions with other agents and law enforcement officers, cooperating witnesses and a review of the evidence related to this investigation.

The source of your deponent's information and the grounds for his belief are as follows:[2]

2.      The government has been investigating DIJON TOONE, also known as "Ace," for the possession and distribution of narcotics, including cocaine base. As set forth below, TOONE utilized the SUBJECT PREMISE for the possession and distribution of narcotics, including cocaine base.

3.      The SUBJECT PREMISE is an apartment within a one-story ranch style home that has gray siding, maroon shutters, a gray roof and an attached garage and is located at 127 DAYTON AVENUE, MANORVILLE, NEW YORK 11949. The SUBJECT PREMISE is located in a garage that was converted into living space. There is a door on the side of the house that leads directly into the SUBJECT PREMISE. Law enforcement officers are seeking a warrant to search the apartment only.

---

distributors of narcotics in an effort to protect their drugs from would be robbers or, in some instances, to protect themselves from rival narcotics dealers.

[2]      Because this affidavit is submitted for the limited purpose of establishing probable cause for search warrants, I have not set forth each and every fact learned during the course of the investigation.

3

4.      On or about November 7, 2017, a grand jury sitting in the Eastern
District of New York returned a two-count indictment charging TOONE with conspiracy to
distribute and possess with intent to distribute 280 grams or more of a substance containing
cocaine base and using a firearm in connection with that drug trafficking crime.  See United
States v. DIJON TOONE, 17-CR-614 (SJF).  That same day, the Honorable Anne Y. Shields,
United States Magistrate Judge, signed a warrant authorizing the arrest of TOONE.  The
investigation has revealed that TOONE lives at the SUBJECT PREMISE.  Indeed, within the
last week, a confidential source told law enforcement that TOONE was living in the
SUBJECT PREMISE.  Additionally, within the last week, law enforcement officers observed
a car that they saw TOONE driving in the past parked in the driveway of the SUBJECT
PREMISE.

5.      Today, November 8, 2017, law enforcement officers went to 127
Dayton Avenue, Manorville, New York to effectuate the arrest warrant.  Law enforcements
entered the home and performed a protective sweep of the home.  While they were doing
that, they heard someone repeatedly flushing the toilet, which appeared to be coming from
the apartment, namely, the SUBJECT PREMISE.  So, they entered the SUBJECT PREMISE
where they found TOONE.  When they checked to see if anyone was in the bathroom, they
observed a plastic bag inside the toilet bowl containing a white substance that appears to be
narcotics.  Based on my training and experience, narcotics traffickers commonly flush, or
attempt to flush, illegal narcotics down the toilet when law enforcement officers enter their
homes.  Law enforcement officers also observed in plain view on the counter inside the
SUBJECT PREMISE a bag containing what appears to be marijuana and an ashtray

4

containing what appears to be the remnants of several marijuana cigarettes. Also in plain view were plastic baggies similar in size and appearance to the plastic bag found in the toilet bowl. Finally, a law enforcement officer told me that, based on his training and experience, the SUBJECT PREMISE smelled of marijuana. Upon their observations, law enforcement officers secured the SUBJECT PREMISE, which has been secure since this morning's arrest, and law enforcement officers are awaiting court authorization to search the SUBJECT PREMISE.

6.      Based on my training and experience and the information provided above, there is probable cause to believe that TOONE has possessed and distributed, and continues to possess and distribute narcotics, including cocaine base, utilizing the SUBJECT PREMISE.

7.      Based on my training, experience, participation in other drug investigations, execution of search warrants, debriefing of confidential informants and extensive discussions with other experienced law enforcement officers, I am familiar with the typical distribution and trafficking methods used by drug dealers and traffickers, including the distribution of cocaine base, cocaine and heroin.

8.      In a substantial number of residential and commercial searches executed in connection with drug investigations, the following kinds of drug-related evidence have typically been recovered:

a.      Members of drug organizations often maintain close at hand the addresses, telephone and pager numbers of their criminal associates, photographs of their associates, indicia of their membership in the drug organization, as well as information

5

pertaining to their sources of supply and customers, in address books, electronic organizers and on other media, physical or electronic;

b.     Telephone bills and records of calls to telephones and pagers are also maintained for lengthy periods of time in defendants' homes. Such records constitute important corroborative evidence in drug conspiracy cases because the defendants call one another regularly, especially just before and after an incident involving an act committed in furtherance of the conspiracy;

c.     Drug traffickers frequently maintain in their residences or stash locations quantities of controlled substances. They also maintain paraphernalia for packaging and distributing controlled substances, such as scales, plastic bags, heat-seal devices, cutting agents and other items;

d.     Drug traffickers frequently maintain books, records, receipts, notes, ledgers, and other documents relating to the ordering, sale and distribution of drugs. Such documents are generally maintained where the traffickers have ready access to them, such as the traffickers' residences; and

e.     Drug traffickers frequently maintain financial records evidencing the deposit and transfer of monies in their homes. Such documents are generally maintained where the traffickers have ready access to them, such as the traffickers' residences.

9.     Based upon my training and experience, as well as my discussions with other law enforcement officers, I am aware that it is generally a common practice for drug traffickers to maintain in their residences records relating to their drug trafficking activities.

6

Because drug traffickers will "front," that is, sell on consignment, controlled substances to their clients, or alternatively, will be "fronted" controlled substances for their suppliers, such record-keeping is necessary to detail amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their trafficking business.

10.     It is also a common practice for traffickers to conceal at their residences large quantities of United States currency, either the proceeds from drug sales or monies to be used to purchase controlled substances. In this connection, drug traffickers frequently make use of wire transfers, cashiers' checks, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences and/or offices.

11.     Finally, I know, from both my professional and personal experiences, that people often maintain their cellular telephones in their residences.

12.     As set forth above, TOONE, who utilizes the SUBJECT PREMISE, is being investigated for conspiring to distribute and possess with intent to distribute narcotics, including cocaine base, and possession of firearms in furtherance of those crimes. Moreover, as set forth above, with regard to the SUBJECT PREMISE, there is probable cause to believe

that evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 924(c), including the items described herein, will be kept at the premises.

13. WHEREFORE, your affiant respectfully requests that a search warrant be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing members of HSI and other law enforcement officers to search the SUBJECT PREMISE and therein to seize certain property, namely:

1. drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;

2. books and records, showing cash transactions, prices and quantities of drugs bought and sold;

3. books and records showing the names, addresses, and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking, including indicia of membership;

4. pagers, electronic organizers, cellular telephones and related bills and receipts;

5. firearms, including firearm ammunition, shell casings, discharged rounds and holsters;

6. motor vehicle records, telephone bills, property records showing ownership of assets purchased with drug proceeds;

7. banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips and any other documents evidencing financial transactions conducted with proceeds;

8. currency used to purchase drugs, or reflecting proceeds of sales of drugs; and

9. photographs, photographic negatives (developed and undeveloped) and video tapes or disks, which show the identities of conspirators, contraband, and evidence of drug trafficking;

all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United

States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Section 924(c).


Sean Gabay
Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
___ day of November, 2017

/s/ Anne Y. Shields

THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

9

## ATTACHMENT A
Property to Be Searched

The SUBJECT PREMISE is an apartment within a one-story ranch style home that has gray siding, maroon shutters, a gray roof and an attached garage and is located at 127 DAYTON AVENUE, MANORVILLE, NEW YORK 11949.  The SUBJECT PREMISE is located in a garage that was converted into living space.  There is a door on the side of the house that leads directly into the SUBJECT PREMISE.  Law enforcement officers are seeking a warrant to search the apartment only.  A picture of SUBJECT PREMISE follows:

## ATTACHMENT B

Seize certain property from the SUBJECT PREMISE, namely:

1.  drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;

2.  books and records, showing cash transactions, prices and quantities of drugs bought and sold;

3.  books and records showing the names, addresses and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking;

4.  pagers, electronic organizers, cellular telephones and related bills and receipts;

5.  firearms, including firearm ammunition, shell casings, discharged rounds and holsters;

6.  motor vehicle records, telephone bills, property records showing ownership of assets purchased with drug proceeds;

7.  banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips and any other documents evidencing financial transactions conducted with proceeds;

8.  currency used to purchase drugs, or reflecting proceeds of sales of drugs; and

9.  photographs, photographic negatives (developed and undeveloped) and video tapes or disks, which show the identities of conspirators, contraband, and evidence of drug trafficking;

all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 924(c).

11